AMERICAN GOGGLE CO. et al. v. MALCOM.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1918.)

No. 2497.

1. PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—EYE SHIELDS.

In the Malcom patent, No. 1,182,398, for an eye shield of transparent flexible material, having two colors extending horizontally, the darker color above to shade the eyes, claims 5, 6, 7, 8, and 9, which claim the two-color feature broadly, are void for anticipation in the prior art. Claims 1, 2, 3, 4, and 10 *held* valid and infringed.

2. PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—EYE SHIELDS.

In the Rextrew patent, No. 1,123,376, for an eye shield, claim 4, which is for an elastic cord and hook for holding the shades in place, is void for lack of invention. Claims 1, 2, 3, 5, and 6 *held* not infringed.

Appeal from the District Court of the United States for the District of Indiana.

Suit in equity by Robert Malcom against the American Goggle Company, Roy E. Green, and William Zimmerman. Decree for complainant, and defendants appeal. Modified and affirmed.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The action was on appellee Malcom's patent, No. 1,182,398, May 9, 1916, and on· Rextrew's patent, ·No. 1,123,376, January 5, 1915, assigned to Malcom, both for improvements in eye shields or goggles. The Malcom patent was applied for September 21, 1914, and the Rextrew patent July 13, 1914. It may be inferred from what little thereon the transcript shows—and both sides seem to take it for granted—that after the grant of the Rextrew patent the Patent Office declared interference between Malcom's claims 5 to 10 and Rextrew's claims 7 to 12, which resulted in priority of invention being awarded to Malcom.

Malcom's shield shows a combination of elements—mostly old. It is of transparent flexible material, such as celluloid or pyrolin, having two colors extending longitudinally, the darker color above to shade the eyes, and so adjusted that the user may, by slightly lowering his head or raising his eyes, place the darker color in the line of vision between him and a bright light he is facing—such as sunlight or the strong light of an approaching automobile. The shield is formed by notching the ends and overlapping them, so as to form side walls which extend forward from the face and at right angles to the front or body portion of the shield, which extends straight across between the most forwardly projecting points of the side walls, and forming a somewhat rigid housing over the eyes, straight across the face. The resiliency of the rim is secured by extending the edge of the transparent material into a rubber tubing forming a rim for the shield conformable to the contour of the wearer's face. Fig. 1, following, of the patent drawings shows the shield:

The main body of the shield is thus spaced a considerable distance from the eyes, affording means for ventilation, and, as stated in the specification, space for the user to wear his ordinary glasses, if desired, without interference by the shield.

The main feature of the Rextrew patent different from Malcom is in the forming of the sides or end walls. Instead of notching the ends of the blank transparent sheet, Rextrew folds them together, and thus fastens them so as to produce about the same shaped shield as Malcom's. There are other features which will be stated as they are considered in the opinion.

The usual defenses are made, of anticipation, aggregation, and noninfringement. The decree finds both patents valid, and all the claims infringed.

Henry M. Dowling, of Indianapolis, Ind., for appellants.
Florence King, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] In the prior art appear patent grants which greatly limit the scope of what appellee may rightfully claim. Alt, No. 183,443, 1876, shows the form of ordinary spectacles wherein the lenses or glasses are in part colored or tinted, so that the wearer may by looking through the colored parts protect his eyes from strong lights. Warren, No. 492,125, 1893, shows an eye shade made of transparent mica dyed

or coated to a desired shade, laid on a cushioned frame of "felt, rubber, or any suitable material." Alles, No. 950,255, 1910, employs ordinary spectacles suited to the eyes of the wearer, to the glasses of which there is removably attached by holding clips, glass, celluloid, or other transparent material, of darker shade, whereby any desired part of the glasses may be shaded, leaving the rest clear. Barr, No. 1,067,793, 1911, equips ordinary goggle frames, with tinted glass, part of the glass being ground materially thinner than the remaining part, so as to afford clearer vision through the thin than through the thicker portions. Harris, No. 1,060,083, 1913, shows goggles which have eye tubes each with a two-colored lens mounted in a separate revoluble frame in order that they may be set to accommodate them to the direction from which the strong light comes, and thus adjust them to the convenience of the wearer. Sheldon, No. 611,396, 1898, is, barring the two colors, which are not there present, more nearly anticipatory than any of the others. It shows an eye shield of celluloid or other flexible material made from a single piece notched at the ends and the parts brought together, so that the shield when in position will at the ends project somewhat from the face and not interfere with the eyelashes; the rim being composed of flexible material such as cloth or felt.

We thus find in the prior art goggles or eye shields of celluloid or other flexible material, and those with the transparent seeing parts made of two shades of material. While Sheldon does not mention two colors, and it does not appear that he employed more than one color, yet in view of the prior art it would not involve invention in Malcom over Sheldon, and would therefore not be patentable in Malcom, to employ two colors in Sheldon's shield. But we are convinced from the record here that, wholly aside from the two colors, the Sheldon shield is not the shield of the patents in issue, which we find to embody a patentably different concept from that of Sheldon. Sheldon evidently contemplated a shield which at its ends or sides extended somewhat outwardly, but otherwise lay flat against the face; the front of the shield conforming to the face contour. The concept of the Malcom and Rextrew patents appears to be substantially different. They show a sort of outwardly sloping roof extending forwardly from above the eyes, and straight across between the outward points of the side walls; the entire horizontal line across the face at the most forward part of the shield being substantially at right angles with the plane of the side walls. The evidence shows that this conception, when embodied in the commercial structure, found prompt and substantial recognition by the public in the very considerable trade which the new article immediately commanded, a fact which must be accorded due weight in determining whether or not the new article possesses the merit of novelty and involves invention in its conception.

Malcom's claims 1, 2, 3, and 4, viewed in the light of what he shows and of the prior art, secured to him the advance he thus made in the construction of the shield. His claim 5 is predicated simply upon the employment of an eye shield of two colors, extending from end to end of the shield; one of the colors affording greater light obstruction than the other. This claim would give to Malcom any shield which

employed the two colors, extending across the front. As has been seen, he is not entitled to claim thus broadly, and claim 5 is therefore void. Claims 6, 7, 8, and 9 fall within the same category as claim 5, and they also are void. Claim 10 describes a structure wherein the darker or greater light-obstructing material is not in the front or seeing part of the shield, but in its side or end walls, whereby the eyes are shaded from light which comes from the sides through the end walls. While from the evidence the utility of such a device is not so plainly apparent as might be desired, it is not controverted, and the prior art shows no structure similar in this respect. The presumptive validity of the claim as granted will therefore prevail.

[2] Respecting the Rextrew patent, claims 7 to 12, having on the interference been awarded to Malcom, need not be further considered. Claim 4 is for elastic loops at the ends of the shield, and a hook at the end of one of the loops adapted to hook upon the other loop, holding the shield in place by the elastic fastening about the head. Flexible eye shields, such as Sheldon's, could not be held to the face by bows, as in ordinary spectacles of rigid construction, nor by springs as in nose glasses, but manifestly only by strings or tape, elastic or otherwise, tied or otherwise held about the head. Whether such fastening member is of one or two pieces, or, if two, whether tied together, or held by a hook, involves expedients altogether too old and common to be in this generation the subject of a patent. Harris, 1913, makes mention of the goggles held in operative relation "through the medium of a band in the usual and well known manner." Warren, 1893, describes an elastic cord about the head to hold the eye shield in place. The claim is clearly invalid. The other claims of this patent are considered in dealing with the question of infringement.

Appellee's claim of novelty in the employment of the rubber rim is clearly overcome by the revelations of the prior art. Genese, No. 295,242, 1884, Mirovitch, No. 807,844, 1905, and Stevens, No. 599,289, 1898, show cushioned rims for goggles. Sheldon describes a rim of felt surrounding his mica shield. We do not find patentable invention in the patents in issue in the employment of the rubber tube for the rim.

It is insisted for appellants that their device is made under the teachings of Rextrew's junior patent, No. 1,186,943, June 13, 1916, assigned to appellant Green, and that it therefore does not infringe. This patent purports to be on its face an improvement on the first named Rextrew patent, the difference claimed to be material to the issues here being the employment in the transparent part of the shield of two pieces of differently colored materials extending longitudinally across the face; the two pieces slightly overlapping and secured together in the various ways described. It seems plain enough that the employment of two pieces of material, instead of one, would not avoid Malcom or the first Rextrew patent. If merit and patentable novelty reside in the employment of two pieces, where Malcom used but one, this would constitute only what Rextrew's last patent claims to be—an improvement on his first. But one may not, in using, this improvement, appropriate with impunity the structure upon which

it has improved. The alleged infringing articles appear in all essential respects to be like those made in accordance with the patents sued on, and infringe them in the manner pointed out, and are not less infringing because of the feature of the two pieces joined together by cement or in some other manner.

As to the Malcom patent, we conclude that claims 1, 2, 3, and 4 are valid and infringed; claims 5, 6, 7, 8, and 9 are invalid; and claim 10 is valid and infringed, in so far as the evidence shows the end walls of appellants' device to be substantially darker than the rest of the shield.

As to the Rextrew patent in issue, we find that claims 1, 2, and 3, comprising as they do the folded ends to form the side walls, without making any cut or notch in the ends of the blank, are not infringed by appelllants' device, which does not have its ends folded. Claim 4, securing to the patentee the feature of the elastic cord and hook for holding the shades in place, is invalid. Claims 5 and 6 include as an element a hook or pin device for holding the shield to the faces of women by hooking into their hair. No such element is shown in appellants' device, and claims 5 and 6 are thus not infringed. Claims 7 to 12, inclusive, are those which were awarded to Malcom on the interference, and are thus disposed of.

The decree of the District Court will be modified in accordance with these views, and, as modified, affirmed; each side to pay one-half the costs of this court.